UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Douglas Shields,

    Plaintiff,

    v.                                  Case No. 1:07cv21

Michael O. Leavitt,                  Judge Michael R. Barrett
Secretary,
Department of Health and
Human Services

    Defendant.

## ORDER

This matter is before the Court upon Defendant Michael O. Leavitt's Motion to Dismiss, or in the Alternate, Motion for Summary Judgment. (Doc. 8) Plaintiff Douglas Shields has filed a Response in Opposition (Doc. 15) and Defendant has filed a Reply (Doc. 16). This matter is ripe for review.

**I.    BACKGROUND**

In August of 1999, Plaintiff was involved in a traffic accident. (Doc. 8., Ex. 1, Douglas Shields Depo. at 8) Plaintiff was injured and spent several days in a local intensive care unit. After leaving the ICU, Plaintiff was treated at the Batavia Family Practice Health Center. Plaintiff was examined by Dr. Hermino Perez, who prescribed the pain killer Oxycontin to him. (Id. at 9-10) Plaintiff normally saw Dr. Perez once a month, and was prescribed sixty Oxycontin pills per month. (Id. at 12-13) Plaintiff was to take one pill every 12 hours. (Id. at 24) Plaintiff would either get a new prescription at one of his visits with Dr. Perez; or call the Health Center and speak to the doctor or leave a message.

(Id.)

Plaintiff would tell Dr. Perez that he was still in pain, but at some point, Plaintiff was no longer in pain, but was merely saying he was in order to obtain the Oxycontin. (Id. at 26-27) While Plaintiff is unable to recall the exact date, he remembers the day that Dr. Perez "turned" and "finally had it in his mind to cut [him] off." (Id. at 33) Plaintiff states: "Only then did I realize that I probably never should have been on Oxycontin. I definitely shouldn't have been on Oxycontin for that long. I realized what a narcotic withdrawal was." (Id.) Plaintiff's last visit with Dr. Perez took place on May 22, 2001. (Doc. 8, Ex. 2)

On August 6, 2001, Plaintiff went to the Health Center and was seen by Dr. Kevin Breslin. (Id.) Plaintiff was "somewhat belligerent" and demanded medication for acute treatment. (Id.) Dr. Breslin explained to Plaintiff that he refused to prescribe narcotic or other habit forming medications to him. (Id.) Plaintiff spoke to the Health Center manager, Tim Sparks, and indicated that he would seek treatment elsewhere. (Id.)

However, on October 2, 2001, Plaintiff was seen at the Health Center and reported that he "needs help tapering off on pain med[ication]s." (Id.) With regards to Plaintiff's visit on August 6th, Plaintiff reported to Dr. Breslin that "[h]e is able to admit now that at that time of that visit he was withdrawing from opiates and was very angry and upset because he needed his medication. Since that time, he has reflected more about the situation and has become more and more aware that he is, in fact, addicted to narcotics and cannot stop without some assistance." (Id.) Plaintiff also reported that he had made some calls himself to try and get some help for his addiction. (Id.) Plaintiff stated that "he felt relieved to finally be honest about how he was feeling and that he now recognized that he truly did have an addiction and needed treatment." (Id.) Plaintiff was started on a course of

methadone, and was advised to contact the Clermont Recovery Center for treatment. (Id.)

On October 9, 2001, Plaintiff was again seen at the Health Center for a follow-up visit, and reported that he was planning to seek treatment for his addiction with the Christ Hospital Substance Abuse Program. (Id.)

On October 18, 2001, Plaintiff spoke with Dr. Breslin on the phone, and explained that he was to begin substance abuse therapy at Christ Hospital on November 12, 2001. (Id.)

On October 23, 2001, Plaintiff was seen by Dr. Breslin and reported that he was on the waiting list for the program at Christ Hospital. (Id.) Dr. Breslin called the Clermont Recovery Center while Plaintiff was in the office. (Id.) The Center was willing to see him immediately, and Plaintiff planned to leave the office and go directly there. (Id.)

On November 9, 2005, Plaintiff filed an administrative claim. (Doc. 8, Ex. 3, Ian Rucker Decl. ¶) On November 9, 2005, Plaintiff's claim was denied. (Id.)

On January 12, 2007, Plaintiff filed the present action. (Doc. 1) In his Complaint, Plaintiff brings a claim pursuant to the Federal Tort Claims Act. Plaintiff alleges that his addiction to narcotics was due to the negligence of Dr. Perez. Defendant admits that this action was properly brought under the FTCA because the Health Center was covered by the Federally Supported Health Centers Assistance Act, and Dr. Perez was employed by the Health Center.

Defendant argues that this case should be dismissed because (1) the United States, and not Defendant, is the proper party; and (2) Plaintiff did not timely file his administrative claim.

## II. ANALYSIS

### A. Motion to Dismiss Standard

Defendant brings his Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

A motion to dismiss based on Rule 12(b)(1) for lack of subject matter jurisdiction must be considered before a motion brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 592 (S.D.Ohio 2002) (explaining that a Rule 12(b)(6) motion may be decided only after establishing subject matter jurisdiction since the Rule 12(b)(6) challenge becomes moot if the court lacks subject matter jurisdiction), *citing Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).

The Sixth Circuit has distinguished between facial and factual attacks among motions to dismiss for lack of subject matter jurisdiction. *Pritchard*, 210 F.R.D. at 592. A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. *Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990). In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. *Id.* On the other hand, a factual attack is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

Under Rule 12(b)(6), "a plaintiff's obligation is to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct 1955, 1964-65 (2007) (citations omitted); *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly,* at 1964-65 (citations omitted) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### B. Summary Judgment

In the alternative, Defendant argues that he is entitled to summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

Moreover, this Court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes v. Runyon*, 912 F.Supp. 280, 283 (S.D.Ohio 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). The

non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes*, 912 F.Supp. at 283.

### C. Federal Tort Claims Act

The FTCA provides, in pertinent part, that:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

Under the FTCA, the United States is the only proper defendant. 28 U.S.C. § 2679(a) ("The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive."). Failure to name the United States as defendant in an FTCA suit "results in a fatal lack of jurisdiction." *Allgeier v. U.S.*, 909 F.2d 869, 871 (6th Cir. 1990). However, even if the Court permitted Plaintiff to amend his Complaint in order to name the United States, this Court still lacks jurisdiction over Plaintiff's claim.

The FTCA grants a limited waiver of sovereign immunity and allows tort claims to be brought against the United States. *Chomic v. U.S.*, 377 F.3d 607, 609 (6th Cir. 2004), *cert. denied*, 544 U.S. 948 (2005). However, under the FTCA, a tort claim against the United States is barred unless it is presented in writing to the appropriate federal agency within two years after the claim accrues. 28 U.S.C. § 2401(b). Because the statute of

limitations is a condition of the government's waiver of sovereign immunity, it must be strictly construed. 377 F.3d at 610, *citing*, *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979).

In actions based on negligence or medical malpractice, federal law controls as to when a claim accrues under the FTCA. *Kubrick*, 444 U.S. at 123; 377 F.3d at 610. The Supreme Court has explained that "a negligence or medical malpractice claim accrues within the meaning of § 2401(b) when a plaintiff knows of both the existence and the cause of his injury, and not at a later time when he also knows that the acts inflicting the injury may constitute negligence or medical malpractice." *Chomic*, 377 F.3d at 610. The Court's reasoning was as follows:

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask.

444 U.S. at 122.

There is evidence in the record that Plaintiff knew that he was addicted to Oxycontin as early as May 22, 2001. That is the date of Plaintiff's last visit with Dr. Perez. Plaintiff testified in his deposition that he knew at some point–necessarily before May 22, 2001–that Dr. Perez "had it in his mind to cut [him] off" the Oxycontin. As a result, Plaintiff states that he realized that "I probably never should have been on Oxycontin. I definitely shouldn't have been on Oxycontin for that long. I realized what a narcotic withdrawal was." In addition to this evidence, there is evidence that in October of 2001 Plaintiff admitted to

Dr. Breslin during several visits that he was addicted to Oxycontin and sought treatment for his addiction.  The very last of these visits was October 23, 2001.  However, Plaintiff did not file his administrative claim until November 9, 2005, which is well beyond the two-year statute of limitations under the FTCA.  The Sixth Circuit has made it clear that the failure to present an administrative claim within the two-year period bars federal jurisdiction. *Singleton v. United States*, 277 F.3d 864, 873 (6th Cir. 2002), *citing Rogers v. United States*, 675 F.2d 123, 124 (6th Cir. 1982).

However, Plaintiff argues that he is entitled to equitable tolling.  A court may only equitably toll the FTCA's statute of limitations under exceptional circumstances. *Schappacher v. U.S.*, 475 F.Supp.2d 749, 756 (S.D.Ohio 2007).  The Sixth Circuit has stated has explained that a court may apply equitable tolling to FTCA actions after considering the following factors: "(1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement."  *Glarner v. United States*, 30 F.3d 697, 701-02 (6th Cir. 1994), *quoting Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988).  The plaintiff bears the burden of establishing that equitable tolling applies. *Schappacher*, 475 F.Supp.2d at 755, *citing Hogan v. U.S*, 2002 WL 1774227, 5 (6th Cir. July 31, 2002) (unpublished), *citing Drazan v. United States*, 762 F.2d 56, 60 (7th Cir.1985).

Plaintiff argues that prior to January or February of 2005, he was unable to pursue his claim because of his addiction.  While Plaintiff has argued that he lacked actual or constructive knowledge of the filing requirement, he has not presented any evidence that he acted diligently in pursuing his rights.  Plaintiff's only explanation for not filing his claim

for over a four year period is his addiction.  There is no allegation that the government prevented him from filing his claim, *see Glarner*, 30 F.3d at 701, that the government concealed its wrongdoing or material facts, *see Kronisch v. United States*, 150 F.3d 112, 123 (2d Cir. 1998), or that he filed his claim in the wrong forum, *see United States v. Midgely*, 142 F.3d 174, 179 (3d Cir. 1998).  Moreover, it was not reasonable for Plaintiff to remain ignorant of the requirements under the FTCA.  Plaintiff admits that he made no efforts whatsoever to pursue his rights until he met with an attorney in October or November of 2005.  However, the Supreme Court has made it clear that equitable tolling should not be applied to cases of "garden variety" excusable neglect. *Irwin v. Dept. of Veteran Affairs*, 498 U.S. 89, 96 (1990).  Therefore, the Court finds that equitable tolling does not apply, and Plaintiff's FTCA claim is barred by the statute of limitations.  Accordingly, this Court lacks jurisdiction, and Defendant's Motion to Dismiss is GRANTED.

### III. <u>CONCLUSION</u>

Based on the foregoing, it is hereby **ORDERED** that Defendant's Motion to Dismiss (Doc. 8) is **GRANTED**.  This matter shall be **CLOSED** and terminated from the docket of this Court.

**IT IS SO ORDERED.**

                                                 /s/ Michael R. Barrett
                                                Michael R. Barrett, Judge
                                                United States District Court